IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Brock Strong,<br><br>            Plaintiff,<br><br>v.<br><br>Frank Noojin, MD; Elizabeth Herbert; Lauren Fryer; Prisma Health d/b/a Prisma Health Medical Group—Midlands a/k/a Prisma Health Orthopedics; John Doe; and Doe Corporation,<br><br>            Defendants. | C/A No. 3:24-cv-06024-JFA<br><br><br>**MEMORANDUM OPINION AND ORDER** |

This matter is currently before the Court on Defendants Frank Noojin, MD ("Noojin"); Elizabeth Herbert ("Herbert"); Lauren Fryer ("Fryer"); and Prisma Health d/b/a Prisma Health Medical Group—Midlands a/k/a Prisma Health Orthopedics' ("Prisma") ("Defendants"), Motion for Summary Judgment as to all claims alleged by Brock Strong ("Plaintiff"), (ECF No. 38), and Plaintiff's Motion to Compel, (ECF No. 44). This matter has been fully briefed and is ripe for review. (ECF Nos. 38, 39, 42, 44 & 45). The Court heard argument on these Motions on June 24, 2026. For the reasons stated herein Plaintiff's motion to compel is denied, and Defendants' motion for summary judgment is granted in part and denied in part.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

This case concerns an arthroscopic surgery where a small piece of plastic was left in Plaintiff's left shoulder. (ECF Nos. 38, p. 2 & 39, p. 1–2). This procedure was performed by Noojin, the orthopedic surgeon; Nurse Fryer,[1] the circulating Nurse; and Herbert, the surgical technician. (ECF No. 38, p. 3). Plaintiff recognized that something was not quite right shortly after the surgery. (ECF No. 38-1, p. 5). Plaintiff saw his Athletic Trainer, Sarah Lyon ("Lyon") who observed a lump about the size of a "Skittle" or a "BB" on the back of Plaintiff's shoulder near the surgical sites. (ECF No. 38-3).



---

[1]  Defendants note that Defendant Lauren Fryer is now "Lauren Fryer McKinney," and refer to her as "Nurse Mckinney" throughout their motion. For ease of reference, this Court will refer to Lauren Fryer McKinney as "Fryer".

(ECF No. 39, p. 2) (photo of Plaintiff's shoulder depicting the "anomaly" after the first surgery). Lyon sent a photo of this anomaly to Noojin. *Id.* Thereafter, Plaintiff was seen by Ryan Berlinrut ("Berlinrut"), a Physician's Assistant in Noojin's office. (ECF No. 38-4). Berlinrut charted that Plaintiff was "[d]oing well pain improving 1 week out from surgery" and also noted that there was a "knot" on Plaintiff's shoulder that was hard and "tender to the touch." *Id.* Noojin saw Plaintiff on June 2, 2022, and charted that Plaintiff was healing but otherwise had a "palpable nodule" near the incision site. (ECF No. 38-5). Noojin performed a removal procedure approximately three weeks later. (ECF No. 38-7). The removed anomaly was identified as "a small piece of plastic from the plastic cannula that was used to do the repair of the labrum from the previous surgery." *Id.*

Plaintiff filed this action against Defendants claiming that they were "negligent, grossly negligent, willful, wanton, and reckless." (ECF No. 22). Thereafter, Plaintiff filed a motion to compel foreign object retention communications and data from Defendant Prisma. (ECF No. 17). This Court issued a limited ruling expressly stating that it granted Plaintiff's request "to the extent that he seeks foreign object retention communications and data as it relates to the named defendant medical personnel." (ECF No. 33).

Currently pending before the Court is Plaintiff's Motion to Compel, which asks this Court to revisit its prior ruling, (ECF No. 44), and Defendants' Motion for Summary Judgment as to all claims asserted by Plaintiff, (ECF No. 38).

3

## II.    LEGAL STANDARD

### a.  Discovery

Parties to civil litigation may obtain discovery on "any nonprivileged matter that is relevant to any party's claim or defense" so long as the information is "proportional to the needs of the case...." Fed. R. Civ. P. 26(b)(1). "The scope and conduct of discovery are within the sound discretion of the district court." *Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 568 n.16 (4th Cir. 1995); *see also Carefirst of Md, Inc. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 402 (4th Cir. 2003) ("Courts have broad discretion in resolution of discovery problems arising in cases before [them]."). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if an opposing party fails to answer an interrogatory pursuant to Rule 33 or fails to produce documents pursuant to Rule 34. Fed. R. Civ. P. 37(a)(3). Moreover, Rule 37 clarifies that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

In responding to a request for production, an "objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2).

4

### b.  Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that burden and a properly supported motion is before the court, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 323. All inferences must be viewed in a light most favorable to the non-moving party, but the non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

### c.  South Carolina Solicitation of Charitable Funds Act

Charitable organizations are entitled to various protections pursuant to the South Carolina Solicitation of Charitable Funds Act. S.C. Code Ann. § 33-56-10 *et seq.* "A person sustaining an injury … by reason of the tortious acts of commission or omission

5

of an employee of a charitable organization, when the employee is acting within the scope of his employment, may recover in an action brought against the charitable organization only the actual damages he sustains in an amount not exceeding the limitations on liability imposed in the South Carolina Torts Claims Act …" S.C. Code Ann. § 33-56-180(A). "A judgment against an employee of a charitable organization may not be returned unless a specific finding is made that the employee acted in a reckless, willful, or grossly negligent manner." *Id.*

### d. Medical Malpractice

"To establish a cause of action for medical malpractice, the plaintiff must prove the following facts by a preponderance of the evidence: (1) The presence of a doctor-patient relationship between the parties; (2) Recognized and generally accepted standards, practices, and procedures which are exercised by competent physicians in the same branch of medicine under similar circumstances; (3) The medical or health professional's negligence, deviating from generally accepted standards, practices, and procedures; (4) Such negligence being a proximate cause of the plaintiff's injury; and (5) An injury to the plaintiff." *Brouwer v. Sisters of Charity Providence Hosps.*, 409 S.C. 514, 521, 763 S.E.2d 200, 203 (2014) (citation omitted).

### III.    DISCUSSION

Plaintiff's Motion to Compel, (ECF No. 44), and Defendants' Motion for Summary Judgment, (ECF No. 38), are both addressed herein.

6

### A. Motion to Compel

Plaintiff's Motion to Compel, (ECF No. 44), asks that this Court compel production of (1) an affidavit of due diligence regarding whether a reasonable search for text messages was conducted,[2] and (2) that this Court revisit its prior limited ruling regarding other similar incidents of retained foreign objects. In this Court's previous order, Plaintiff's request regarding the same subject matter was granted limited only to foreign object retention as it relates to the named defendant medical personnel. Specifically, this denied Plaintiff's request to obtain similar information from Prisma as "an inquiry into Prisma's conduct exceeds the scope of discovery," following the Court's determination that Prisma does not owe any duty to Plaintiff. (ECF No. 33).

Thus, the issue before the Court is whether statements made by the named Defendants require this Court to revisit its prior ruling that Plaintiff is entitled to information regarding prior similar incidents as it relates to the named Defendants, not from Prisma.

Plaintiff avers that his present argument, "lack of notice of the hazard is a different argument than lack of duty." (ECF No. 44, p. 2). Plaintiff argues that Defendants, in their Motion for Summary Judgment, "seek to minimize the risk of a retained plastic cannula fragment by arguing that they had no notice of this hazard because, they claim, it has never happened before." *Id.* Specifically, Plaintiff takes issue with Defendants' statement in their

---

[2] The parties informed this Court at the hearing that Plaintiff's request for an affidavit of due diligence is moot as Defendants have since produced the requested information. Thus, the only issue remaining for the Court in this motion is Plaintiff's second request that this Court revisit its prior limited ruling regarding other similar incidents of retained foreign objects.

brief that "it is undisputed that all of the medical professionals in this case (including Plaintiff's own expert), despite years of surgical experience, have never seen a disposable plastic cannula fragment in this manner." *Id.* (citing ECF No. 42, p. 3). "Plaintiff therefore respectfully asks the Court to reconsider its ruling limiting the discoverability of evidence of other similar incidents. Defendants should be required to identify any incidents at Prisma involving the breakage of disposable plastic surgical devices like the cannula at issue here. Otherwise, Defendants will be allowed to take advantage of the evidentiary vacuum created by the Court's ruling." (ECF No. 44, p. 2) (citation modified). Plaintiff's Motion to Compel is denied. As argued by Defendants in their response, one issue in this case is whether the named Defendants had any knowledge of this plastic cannula breaking in the past to warrant them giving it a "heightened inspection" which Plaintiff argues was necessary. (ECF No. 45, p. 5). Thus, Defendants' argument that the named Defendants have never, in their experience, had this happen, or heard of it happening, does not "open the door" for Plaintiff to now access information regarding any similar incident occurring at any Prisma hospital as they so argue.

Accordingly, because there has been no change in law, newly discovered evidence, or any error of law, Plaintiff's request for a widening of the previous limited ruling is denied. Therefore, Plaintiff's Motion to Compel, (ECF No. 44), is denied.

### B. Motion for Summary Judgment

Defendants seek Summary Judgment in their favor as to all claims asserted by Plaintiff. (ECF No. 38). In so arguing, Defendants claim that summary judgment in their favor is appropriate with respect to Plaintiff's claims for medical negligence stemming

from the retained piece of plastic cannula. *Id.* at 7. Defendants support this argument by stating that Plaintiff's expert witness is not qualified to give testimony regarding Noojin's actions, and that even so, Noojin's actions along with the other named Defendants do not amount to negligence to support recovery against Prisma, nor do their actions amount to reckless, willful, or grossly negligent acts to support individual liability as required by the Solicitation of Charitable Funds Act.[3] *Id.* at 10–14.

> **i.      Defendants argue that Plaintiff's expert witness is not qualified to testify as to Dr. Noojin's actions. (ECF No. 38, p. 10).**

South Carolina law requires that Plaintiff establish through expert testimony what the applicable standard of care is and what has been done by Defendants to constitute a deviation from the standard of care. *David v. McLeod Reg'l Med. Ctr.*, 367 S.C. 242, 248, 626 S.E.2d 1, 4 (2006). Defendants argue that S.C. Code Ann. § 15-36-100(A) establishes the strict qualification requirements for expert witnesses in professional negligence cases and accordingly requires that an expert witness must be "qualified as to the acceptable conduct of the professional whose conduct is at issue and also meet both specific licensing and experience criteria." (ECF No. 38, p. 10) (citing S.C. Code Ann. § 15-36-100(A)). Specifically, Defendants argue that Plaintiff's expert witness, Evangeline Dennis ("Dennis"), is not a qualified expert as to Dr. Noojin because she is a nurse rather than a surgeon. (ECF No. 38, p. 10). Conversely, Plaintiff argues that the admissibility of expert testimony is governed by Fed. R. Evid. 702, and also cites to South Carolina case law

---

[3]  Prisma is a charitable entity as defined by the Solicitation of Charitable Funds Act.

which Plaintiff argues provides "black-letter law that expert testimony need not come from a specialist in the same field of medicine as the defendant." (ECF No. 39, p. 3).

As an initial note, this Court is not convinced that it is required to defer to South Carolina's definition of an expert witness as it relates to the sufficiency of an expert's credentials, especially as it pertains to pre-suit filing requirements. *See Pledger v. Lynch*, 5 F.4th 511, 518–524 (4th Cir. 2021) (holding "that failure to comply with West Virginia's MPLA [W. Va. Code § 55-7B-6] is not grounds for dismissal of Pledger's federal-court FTCA action" because "there is now a growing consensus [among states] that certificate requirements like West Virginia's do not govern actions in federal court, because they conflict with and are thus supplanted by the Federal Rules of Civil Procedure"). Further, if Defendant wished to challenge an expert not meeting the definition prescribed for in S.C. Code § 15-36-100(A), the text of this section refers litigants to S.C. Code Ann. § 15-36-100(E) which would require the filing of a motion to dismiss filed contemporaneously with its initial responsive pleading. This is consistent with this statute's applicability with South Carolina's pre-suit requirements.

Nonetheless, this Court finds that Dennis is a qualified expert as to Dr. Noojin, along with the other named Defendants, under both the South Carolina statute and the Federal Rules of Evidence. Plaintiff presents that Dennis has the following professional credentials: Bachelor of Science in Nursing (RN); Masters in Nursing and Health Administration (MSN); Certified Operating Room Nurse (CNOR); Certified Laser Safety Officer (CMLSO); Fellow, Association of Perioperative Registered Nurses (FAORN); Past

10

President of AORN (2022-23); Fellow, American Academy of Nursing (FAAN). (ECF No. 39, p. 4). Further, Plaintiff provides that Dennis' professional experiences relevant to her qualifications in this case include: "she was last in an operating room in late summer 2025; she has participated in thousands of orthopedic surgery procedures; from 1987 to 1996, she spent 100% of her time doing clinical nursing scrubbing for surgery; from 2014 to 2015, she was in scrubs on a daily basis and routinely in operating rooms; she has previously testified as an expert in a retained foreign object case." *Id.* at 5.

To the extent Defendants argue that S.C. Code Ann. § 15-36-100(A) requires that this Court find a nursing expert cannot testify to the actions of an orthopedic surgeon just by virtue of the difference in profession, the Court must disagree. Defendants fail to address subsection three of section A which provides that where an individual is not covered by subsections (A)(1) or (2), meaning the professional qualifications may not be of equal measure, if the individual "has scientific, technical, or other specialized knowledge which may assist the trier of fact in understanding the evidence and determining a fact or issue in the case by reason of the individual's study, experience, or both" the individual may fall under the definition of an "expert witness." S.C. Code Ann. § 15-36-100(A)(3). The Supreme Court of South Carolina has interpreted this subsection to indicate that "the [expert] need not be a member of the same profession as the defendant, as long as the requirements of (A)(3) are met." *Charles Blanchard Constr. Corp. v. 480 King St., LLC*, 447 S.C. 295, 306, 926 S.E.2d 235, 241 (2026).

11

Accordingly, due to Dennis' professional credentials and experiences discussed above, while she may not be qualified to offer opinions on the conduct of Dr. Noojin as a surgeon, she is qualified to "offer[] opinions about Dr. Noojin's inspection of the cannula after its surgical use had ceased, specifically the reasonableness of Dr. Noojin's effort to detect the breakage that occurred." (ECF No. 29, p. 6). This holding is supported by a recent South Carolina Court of Appeals decision wherein the court found that a nurse was a qualified expert to testify as to a nurse practitioner's actions in rendering an emergency room workup. *Walker v. AnMed Health*, 446 S.C. 419, 432, 919 S.E.2d 565, 571 (Ct. App. 2025), *reh'g denied* (Sept. 3, 2025), *cert. denied* (Feb. 11, 2026) ("And, while we agree with the circuit court that High might not be qualified to render an expert opinion as to *all* of the breaches Appellants allege because High is not licensed, board certified, or specifically educated as a nurse practitioner, we find High is qualified to render an opinion as to one or more of the breaches alleged in his affidavit based on his 'scientific, technical, or other specialized knowledge' in the emergency medicine context.").

Further, Dennis' testimony is admissible under the Federal Rules of Evidence:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and

(d) The expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Defendants do not challenge Dennis's overall qualifications to serve as an expert witness. (ECF No. 42, p. 5 "Defendants do not challenge, at this juncture, Nurse Dennis's qualifications to serve as an expert in this case."). Rather, as discussed above, Defendants narrowly challenge Dennis's qualifications to testify as to Dr. Noojin's conduct due to the difference in licensure qualifications between Dennis and Noojin. As previously addressed, the difference in licensure is not dispositive of Dennis's qualifications to testify as to Noojin's conduct. Rather, Dennis's qualifications related to operating room procedure suggest that she is qualified to provide an opinion as to Noojin's conduct insofar as it falls under operating room procedure rather than a surgeon's standard of care in performing an arthroscopic shoulder repair.

Accordingly, the Court finds that Dennis is a qualified witness to testify as to the operating room procedure, even as it relates to Noojin's actions.

### ii. Defendants argue that Plaintiff's claims of negligence as to the members of the surgical team all independently fail on the merits. (ECF No. 38, p, 11).

Plaintiff's surgical team members involved in this action include Dr. Noojin, Plaintiff's surgeon; Surgical Technician Elizabeth Herbert; and Nurse Lauren Fryer. Defendants aver that the breaches of standard of care which Dennis includes in her expert report and provides more detail on in her deposition fail to support Plaintiff's claims.

As discussed, Prisma is a charitable hospital subject to various protections pursuant

13

to the South Carolina Solicitation of Charitable Funds Act. As such, "[a] person sustaining an injury … by reason of the tortious acts of commission or omission of an employee of a charitable organization when the employee is acting within the scope of his employment may recover in an action brought against the charitable organization …." S.C. Code Ann. § 33-56-180(A). The Solicitation of Charitable Funds Act provides protections to employees of a charitable organization such that "[a] judgment against an employee of a charitable organization may not be returned unless a specific finding is made that the employee acted in a reckless, willful, or grossly negligent manner." S.C. Code Ann. § 33-56-180(A). Defendants' arguments regarding each member of the surgical team are addressed below:

### A. Dr. Noojin

Defendants argue that Plaintiff has failed to satisfy his burden of proof as to whether Dr. Noojin deviated from the standard of care. (ECF No. 38, p. 13). To support this argument, Defendants argue that Expert Dennis's report states that "Dr. Noojin should have notified the [] surgical team members Lauren [Fryer] RN and Elizabeth Herbert ST that the arthroscopic [cannula] was not retrieved in its entirety." *Id.* at 12, (citing ECF No. 38-15, p.4). Defendants argue that Dennis's criticism hinged on the premise that Dr. Noojin was aware the cannula had been compromised after the procedure and failed to notify the other surgical team members. *Id.* Further, Defendants provide Noojin's deposition testimony wherein he stated it was reasonable for the compromise to the cannula to not have been noticed, (ECF No. 38-9, pp. 43–47), and that Dennis's own deposition testimony shows

14

that the standard of care does not require the surgeon to forensically examine equipment, as "surgeons don't routinely do that. They depend on their team for the assessment of the equipment." (ECF No. 38-13, p. 89).

Conversely, Plaintiff argues that he has met his burden through expert testimony, deposition testimony by Dr. Noojin, and answers to interrogatories. (ECF No. 39). Plaintiff cites the following three answers to interrogatories received from Defendants:

> 15. Identify the person(s) who had the task of checking to make sure that no foreign object was left inside Brock Strong's body at the conclusion of the shoulder surgery performed on May 17, 2022.
>
> RESPONSE: As the surgeon performing the surgery, Dr. Frank Noojin would have been responsible for checking the surgical site for foreign objects prior to the completion of the surgery.
>
> 22. Did the standard of care applicable to the May 17, 2022, surgery at issue in the case require that the entire cannula be removed at the conclusion of the surgery? Yes or No.
>
> RESPONSE: Yes
>
> 23. Did the standard of care applicable to the May 17, 2022, surgery at issue in the case require the inspection of the cannula to ensure that it was intact at the conclusion of the surgery? Yes or No.
>
> RESPONSE: Yes

(ECF No. 39, p. 10).

Plaintiff argues these interrogatory responses, Expert Dennis's report, and Dennis's deposition testimony that Dr. Noojin breached the standard of care by failing to notice the compromised cannula brings this case beyond summary judgment. *Id.* The Undersigned agrees with Plaintiff. Plaintiff has presented expert testimony, and interrogatory responses

15

which show a dispute of fact exists regarding whether Dr. Noojin's actions were reckless, willful, or grossly negligent. Accordingly, Defendants' motion as to Dr. Noojin's conduct during the procedure is denied.

### B. Nurse Fryer

Defendants argue that Plaintiff's claims of medical negligence against Nurse Fryer fail. (ECF No. 38, p, 13). Specifically, Defendants argue that Expert Dennis's opinion that Nurse Fryer breached the standard of care hinged entirely on Fryer having inspected the cannula, or having been notified the cannula was damaged. *Id.* Defendants present the following exchange from Dennis's deposition:

> Q. Okay. And your testimony there with respect to [Fryer], it all hinges on her actions after she's notified, correct?
> A. Correct.
> …
> Q. Is it a breach of the standard of care for [Fryer] to not have picked [the cannula] up as a circulating nurse?
> A. No. It's usually picked up by the scrub nurse first.

(ECF No. 38-13, pp. 83, 84).

Conversely, Plaintiff argues that Dennis's deposition testimony was conditional as she could not recall the specific details about what Fryer had said her vantage point was in the operating room. (ECF No. 39, p. 10). Further, Plaintiff emphasizes that Fryer testified she did have an opportunity to see the cannula but did not inspect it because it was not a "countable item" that needed to be inspected. *Id.* at 10–11. Accordingly, Plaintiff argues

that he has met his burden and established that a dispute of material fact exists as to whether Nurse Fryer's actions were negligent, reckless, willful, or grossly negligent.

Defendants' Motion for Summary Judgment as to Nurse Fryer is granted. Plaintiff's expert states that her opinion regarding any breach of the standard of care by Fryer was conditioned on her being notified of an issue with the cannula. There is no evidence in the record that suggests this occurred. Further, Dennis states in her deposition that it would not be a breach of the standard of care for a nurse such as Nurse Fryer to not have picked up and inspected the cannula, rather that responsibility would fall to a scrub nurse. The evidence presented by Plaintiff does not create a dispute of fact over whether Fryer's actions were negligent, reckless, willful, or grossly negligent. Thus, Defendants' Motion for Summary Judgment as to Nurse Fryer is granted, and she is accordingly dismissed from this action.

### C. Surgical Technician Herbert

Defendants argue Plaintiff's claims against Herbert must fail as the "record supports the finding that everything she did was reasonable." (ECF No. 38, p. 13). Expert Dennis's opinion provides that she believes Herbert should have assessed the cannula in its entirety and reported to Dr. Noojin and Nurse Fryer that the cannula was compromised. *Id.* In Dennis's deposition, she testified that after a device is removed from a patient and placed on the mayo stand, a surgical technician must examine it. (ECF No. 38-3, pp. 75–76). Further, she agreed that the standard of care requires a visual assessment but does not require a more forensic approach such as weighing or measuring the device. *Id.* Defendants

17

argue that Dennis and Plaintiff are attempting to impute a strict liability standard, or some form of *res ipsa* analysis on Defendants rather than evaluating the conduct of a reasonable surgical technician. The Court disagrees.

A dispute of material fact exists regarding whether Herbert's conduct in evaluating the cannula was negligent, reckless, willful, or grossly negligent. Defendants, with the help of their own expert, vehemently argue that it was reasonable for the visual inspection performed by Herbert to not reveal the missing piece of cannula. This missing piece is depicted in the above image of the prominent lump in Plaintiff's shoulder. Conversely, Plaintiff presents an expert witness that alleges Herbert breached the standard of care by failing to notice the missing fragment of the cannula upon inspecting it. Accordingly, evidence exists on both sides sufficient to create a dispute of a material fact regarding Herbert's actions sufficient to move this beyond summary judgment. Thus, Defendants' motion for summary judgment as to Herbert is denied.

     **iii.**    **Defendants argue they are entitled to summary judgment for Plaintiff's claims of medical negligence stemming from an alleged failure to timely diagnose. (ECF No. 38, p. 14).**

Defendants argue that Plaintiff's claim of medical negligence for failure to timely diagnose fails because Plaintiff does not provide expert testimony to prove this claim, and the evidence demonstrates that Dr. Noojin did not breach the standard of care in allegedly failing to timely diagnose. *Id.* at 14–15. This claim stems from the approximate one-month period of time from when Dr. Noojin was made aware of the abnormality protruding from Plaintiff's shoulder and the date the abnormality was removed.

Upon reviewing the briefs, evidence, and hearing argument in this case, this Court is inclined to agree with Defendants and grant Defendants' motion as to this cause of action. Plaintiff provides no expert testimony to prove this claim of medical negligence as required under substantive South Carolina law. Further, Plaintiff provides no evidence, expert or otherwise, that it was an unreasonable breach of the standard of care for Dr. Noojin to wait for the amount of time he did to remove the abnormality. Accordingly, Defendants' Motion for Summary Judgment is granted as to this cause of action.

iv.     **Defendants argue Summary Judgment is appropriate with respect to any claims of "hospital corporate negligence." (ECF No. 38, p. 16).**

Defendants argue that Plaintiff's "hospital corporate negligence" claims fail as a matter of law as hospital corporate negligence is not a recognized cause of action in South Carolina. The Court has assessed the veracity of Defendants' arguments and finds that hospital corporate negligence is not a currently recognized cause of action in South Carolina. *McCord v. Laurens Cnty. Health Care Sys.*, 429 S.C. 286, 297–298, 838 S.E.2d 220, 224–226 (Ct. App. 2020) ("What Appellants are urging us to do is … recognize the theory of hospital corporate negligence, a doctrine accepted in numerous states, that imposes a duty of care on hospitals based on the reality of their responsibility for patient safety and well-being, despite whatever intricate personnel structures and contractual barriers hospitals may have created … We have considered the corporate negligence doctrine for hospitals before but passed on the invitation to recognize it … Even if we were inclined to agree with the hospital corporate negligence doctrine, such a declaration of public policy is the function of the legislature or perhaps our supreme court.").

Accordingly, because hospital corporate negligence is not a recognized cause of action in South Carolina, Defendants' motion for summary judgment as to this claim is granted.

>    **v.    Defendants argue that summary judgment is appropriate with respect to Plaintiff's claims of improper billing. (ECF No. 38, p. 17).**

Plaintiff accuses Prisma of turning over bill(s) to collections and alleges that as a result, he has been "harassed by bill collectors demanding payment of charges that are not and should not be considered [Plaintiff's] responsibility." (ECF No. 39). He further claims that any consequent damage to his credit or reputation is the fault of Defendants. *Id.*

Defendants argue that summary judgment must be granted in their favor as to these claims because there is no evidence in the record to support Plaintiff's claims. (ECF No. 38, p. 17). The record reflects that Plaintiff was originally billed for the second surgery, which was conducted to remove the fractured cannula fragment, however, he did not ultimately pay this fee. (ECF No. 38-19 Allison Strong Depo. "They did charge him for the second surgery. I don't think it was like a full price of an actual surgery, but they did charge him and he refused to pay it, likely so. It was a mess up. And debt collectors were calling, calling, calling. He finally said, 'It was a mess up surgery.' They never called again.")

Conversely, Plaintiff argues that whether he paid these medical bills is irrelevant. (ECF No. 39, p. 16). Plaintiff avers that "[n]ot every harm is economic in nature. Whether [Plaintiff] paid the disputed bills for the second surgery or suffered some damage to his credit is not determinative of his right to recover compensation. The collection efforts

20

caused aggravation and annoyance which are recoverable as part of the emotional distress, mental anguish, and psychological trauma directly resulting from the Defendants' wrongful conduct." *Id.* at 16–17.

The Court determines Plaintiff has not presented sufficient evidence to move this claim beyond summary judgment. Plaintiff has not shown that his credit was impacted in any way from this alleged improper billing, nor that he paid this bill. Further, Plaintiff presents no evidence of how an indeterminate amount of phone calls "caused him aggravation and annoyance" that should be recoverable as "part of the emotional distress, mental anguish, and psychological trauma" resulting from Defendants' conduct. Accordingly, Defendants' motion for summary judgment as to this claim is granted.

> vi.    **Defendants argue Plaintiff's claims for punitive damages should be dismissed. (ECF No. 38, p. 19).**

Defendants argue that the Solicitation of Charitable Funds Act prohibits recovery of punitive damages from a charitable organization such as Prisma. Further, Defendants state that "[a]rguably, the only time punitive damages may come into play is if a plaintiff has named and has proven that the individual employees 'acted in a reckless, willful, or grossly negligent manner.'" *Id.* Thus, in keeping with their argument that the individual Defendants be dismissed due to lack of reckless, willful, or grossly negligent actions, an argument this Court denies in part above, Defendants argue there can be no remaining claim of punitive damages.

The South Carolina Charitable Funds Act states in relevant part:

> A person sustaining an injury or dying by reason of the tortious act of commission or omission of an employee of a charitable organization, when the employee is acting within the scope of his employment, **may recover in an action brought against the charitable organization only the actual damages he sustains in an amount not exceeding the limitations on liability imposed in the South Carolina Tort Claims Act in Chapter 78 of Title 15.** An action against the charitable organization pursuant to this section constitutes a complete bar to any recovery by the claimant, by reason of the same subject matter, against the employee of the charitable organization whose act or omission gave rise to the claim unless it is alleged and proved in the action that the employee acted in a reckless, wilful, or grossly negligent manner, and the employee must be joined properly as a party defendant. **A judgment against an employee of a charitable organization may not be returned unless a specific finding is made that the employee acted in a reckless, wilful, or grossly negligent manner**.

S.C. Code Ann. § 33-56-180(A) (emphasis added).

As argued by Defendants, this statute limits the recovery of punitive damages against a charitable organization such as Prisma. Thus, Defendants' motion for summary judgement as to any claim of punitive damages against Prisma is granted. However, this statute does not similarly place this limitation on a judgment against an employee of a charitable organization where a specific finding is made that the employee acted in a reckless, willful, or grossly negligent manner. Because this Court finds that there is a dispute of material fact regarding whether Dr. Noojin and Surgical Technician Herbert's actions were reckless, willful, or grossly negligent, the Court declines to dismiss Plaintiff's claim of punitive damages against them at this time.

## IV.     CONCLUSION

For the reasons stated herein and at the hearing, Plaintiff's motion to compel is denied, and Defendants' motion for summary judgment is granted in part and denied in part.

IT IS SO ORDERED.

*Joseph F. Anderson, Jr*

July 1, 2026   Columbia,                                Joseph F. Anderson, Jr.
South Carolina                                       United States District Judge